UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DERRICK MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:16CV25 PLC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Derrick Moore seeks review of the decision of the Social Security Commissioner, Nancy Berryhill, denying his application for Supplemental Security Income under the Social Security Act.[2] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

*I.     Background and Procedural History*

On January 17, 2013, Plaintiff filed an application for Supplemental Security Income alleging he was disabled as of October 15, 2006 as a result of bipolar disorder and anxiety.[3] (Tr. 69-79, 133-36). The Social Security Administration (SSA) denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 69-79, 88).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7).
[3] The SSA denied Plaintiff's previous applications for Disability Insurance Benefits on February 22, 2007; January 17, 2008; and December 7, 2010. (Tr. 70).

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on May 8, 2014. (Tr. 36-53). At the hearing, Plaintiff testified that he was thirty-two years of age, lived with his parents, and had completed high school and some college. (Tr. 40-41, 47-48). Plaintiff stated he last attended college in 2012, when he had "a mental, I guess you would call, relapse….The next fall to get back in, my psychiatrist had to write a letter saying that I was able enough to return to school. And then I was – had some more issues and had to drop." (Tr. 41).

Plaintiff testified that he began taking medication for depression and anxiety when he was fourteen years old, and he was diagnosed with bipolar disorder when he was nineteen or twenty years old. (Tr. 43). Since that, time Plaintiff "pretty much stayed on the medications but never got any better." (Tr. 43). At the time of the hearing, he was taking Seroquel, trazodone, Xanax, Lamictal, and Celexa. (Id.). Plaintiff explained that, about two months ago, "after fifteen years of not getting better," he had switched psychiatrists. (Id.). Plaintiff's new psychiatrist, Dr. Habib, took Plaintiff off Klonopin and placed him on Xanax, which Plaintiff believed was more helpful. (Tr. 45-46).

Plaintiff's symptoms included sleepwalking, falling asleep "in weird places," and social isolation. Plaintiff stated, during his childhood, his father physically and verbally abused him, and "[n]ow it's just full-on mental [abuse]." (Tr. 48). Plaintiff had been addicted to painkillers and was "working through" and almost finished with a treatment program at a methadone clinic. (Tr. 50).

Plaintiff explained that he had difficulty maintaining employment because "[i]t's like I'll get this overwhelming sensation in my head and body that's saying, you'd be better off at home." (Tr. 47). Plaintiff testified that, when he worked as a cook at O'Charley's, he "was fine with one or two orders. But as soon as it started coming up, my brain would overload. And so…I got

demoted as far down as you can go without them directly firing you." (Tr. 48). Plaintiff was also terminated from a "cook type" position at a "fair job" because he was "mentally too slow to be there[.]" (Tr. 49).

On July 30, 2014, a vocational expert answered interrogatories posed by the ALJ. (Tr. 250-52). The vocational expert stated that Plaintiff had previously worked as a restaurant cook, delivery driver, dishwasher, retail sales clerk, and waiter/fast food worker. (Tr. 250). In accordance with the interrogatories, the vocational expert considered a hypothetical individual with Plaintiff's age, education, and work experience that "is limited to jobs that involve understanding, remembering, and carrying out only simple instructions, and performing repetitive tasks. Additionally, the claimant cannot perform jobs that require contact with the public, and is limited to jobs that involve only occasional interaction with coworkers and supervisors." (Tr. 251). The vocational expert stated that such individual could not perform Plaintiff's past relevant work "because all of [those jobs] require contact with the public and all involve more than simple repetitive tasks." (Id.). However, the vocational expert stated that such individual could perform the following jobs: nursery laborer; salvage laborer; egg washer; garment folder; puller through; and blower-stuffer. (Id.).

Plaintiff's counsel did not object to the vocational expert's answers to interrogatories being entered into evidence. (Tr. 256-57). However, Plaintiff's counsel sent the ALJ additional interrogatories and requested they "be forwarded to the vocational witness for a response." (Id.). Plaintiff's interrogatories added to the ALJ's hypothetical question the limitations of being off-task twenty percent of the day and missing two days of work per month. (Id.). The ALJ declined to send Plaintiff's questions to the vocational expert because "the record…does not support those limitations." (Tr. 21).

3

In a decision dated August 26, 2014, the ALJ applied the five step evaluation process set forth in 20 C.F.R. § 916.920[4] and found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since January 17, 2013, the date the application was filed[.]" (Tr. 14-22). The ALJ found that Plaintiff suffered the severe impairments of depression and anxiety, but his testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible[.]" (Tr. 16, 17). In particular, the ALJ noted that Plaintiff's medical records revealed "a moderate amount of treatment for his mental health impairments," which was limited to medication and included neither "any type of psychotherapy on a regular basis" nor "any type of inpatient psychiatric treatment." (Tr. 18). Additionally, Plaintiff's mental status examinations showed only "moderate abnormalities in his mental health functioning," and his medical records revealed that "his medications were not altered on a frequent basis," suggesting "that his treatment providers believed he was receiving adequate symptom relief with his medications." (Id.).

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to jobs that involve understanding, remembering, and carrying out only simple instructions, that do not involve providing services to the public, and involve only occasional interaction with coworkers and supervisors." (Tr. 16-17). Finally, the ALJ concluded that, while Plaintiff had no past relevant work, "there are jobs that exist in significant numbers in the national economy that [he] can perform[.]" (Tr. 20).

---

[4] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

## II. Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the SSA. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## III. Discussion

Plaintiff claims that there was insufficient evidence to support the ALJ's determination that he was not disabled because the ALJ failed "to pose a hypothetical question to the vocational expert that contained all of [Plaintiff's] credible limitations." (ECF 12 at 8). Additionally, Plaintiff argues that the ALJ's failure to forward the vocational expert his interrogatories

deprived him of a full and fair hearing. (Id. at 12-13). Defendant counters that the ALJ properly formulated Plaintiff's RFC and found that he could perform other jobs existing in significant numbers in the national economy. (ECF No. 17 at 5).

*A. Hypothetical question*

Plaintiff contends that the ALJ erred when he relied on the vocational expert's interrogatory responses to find that Plaintiff was not disabled because the hypothetical question upon which the expert based his response did not include all of Plaintiff's limitations. (ECF No. 12). More specifically, Plaintiff complains that, even though the ALJ assigned great weight to the consultative medical examiner's opinion that Plaintiff was moderately limited in his ability to adapt to his environment, the ALJ failed to include that limitation in either the RFC or the hypothetical question. (Id.). In response, Defendant argues that: (1) the ALJ did not expressly find that Plaintiff had moderate limitations in his ability to adapt to his environment; (2) "Plaintiff does not identify any additional limitations that he believes were required"; and (3) "even if the ALJ had included some limitation on Plaintiff's ability to adapt to changes in routine work setting, Plaintiff could still perform three of the jobs identified by the ALJ." (ECF No. 17 at 8-9).

If the ALJ finds at step four of the sequential evaluation process that a claimant cannot perform his past relevant work, the ALJ proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). See also Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence to support the ALJ's decision. Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). "A hypothetical question

posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Perkins v. Astrue, 648 F.3d 892, 901-02 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005)).

In this case, Dr. Paul Rexroat, a consultative medical examiner, completed a psychological evaluation and medical source statement (MSS) for Plaintiff. (Tr. 341-48). Dr. Rexroat diagnosed Plaintiff with: major depression, recurrent, severe without psychotic features; panic disorder with agoraphobia; cannabis abuse in full, sustained remission three years; and pain medication dependence in full, sustained remission three years. (Tr. 347). In the MSS, Dr. Rexroat indicated that Plaintiff had: no restrictions on his ability to understand, remember, and carry out simple instructions or make judgments on simple work-related decisions; and moderate limitations on his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (Tr. 341). In regard to social functioning, Dr. Rexroat opined that Plaintiff was: mildly restricted in his ability to interact appropriately with co-workers; moderately limited in his ability to interact appropriately with supervisors and respond appropriately to usual work situations and changes in a routine work setting; and markedly restricted in his ability to interact appropriately with the public. (Tr. 342).

In his decision, the ALJ reviewed Dr. Rexroat's opinion and noted that Dr. Rexroat found Plaintiff "could sustain concentration and persistence with simple tasks, and he had mild limitations in his ability to interact socially and moderate limitations in his ability to adapt to his environment." (Id.). The ALJ gave Dr. Rexroat's opinion "great weight" because:

> [The opinions] were rendered after Dr. Rexroat had the opportunity to thoroughly examine the claimant. They are consistent with his examination report that showed the claimant had moderate abnormalities in his mental health functioning. They are consistent with the evidence that shows the claimant is able to engage in numerous activities of daily living, which shows he can complete tasks and have some social interaction. The[y] are consistent

7

> with the fact that he has required only moderate treatment for his mental health impairments, which indicates he is only moderately limited by his impairments.

(Id.). The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels as long as it: involved understanding, remembering, and carrying out only simple instructions; did not involve providing services to the public; and involved only occasional interaction with coworkers and supervisors. (Tr. 17).

Plaintiff complains that, "after finding that [he] had credible limitations in the ability to adapt to a work environment, the ALJ included no corresponding limitations in the hypothetical question posed to the vocational expert or in the resulting RFC." (ECF No. 12 at 9). As an initial matter, the Court notes that, the ALJ did not expressly adopt Dr. Rexroat's opinion that Plaintiff had moderate limitations in his ability to adapt to his environment. See, e.g., Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.") (internal quotation omitted). Furthermore, while the ALJ did not include an adaptive limitation, he imposed several other limitations to accommodate Plaintiff's mental health impairments − namely, restrictions to simple instructions and tasks, no services to the public, and occasional interaction with coworkers and supervisors. (Tr. 17).

Assuming, arguendo, that the ALJ found that Plaintiff was moderately limited in his ability to adapt, the failure to include that limitation in the RFC and hypothetical question did not constitute reversible error. As Defendant correctly asserts, three of the six jobs identified by the vocational expert required only Level 1 reasoning, or the ability to "apply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized

situations with occasional or no variables in or from these situations encountered on the job." DOT 782.687-030 (puller-through); 789.687-066 (garment folder); 529.686-030 (egg washer).

Even if the ALJ recommended jobs that required adaptive ability beyond Plaintiff's RFC, such error "does not devalue the rest of [his] opinion." Grable v. Colvin, 770 F.3d 1196, 1202 (8th Cir. 2014). "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." Id. (citing Weiler v. Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999)). Here the vocational expert identified three jobs that an individual with Plaintiff's RFC, as well as a limitation on the ability to adapt to the environment, could perform. The Court therefore holds that the vocational expert's testimony in response to the ALJ's hypothetical constituted substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy that Plaintiff could perform.

*B. Plaintiff's interrogatories*

Plaintiff also alleges that the ALJ's failure to forward his interrogatories to the vocational expert deprived him of a full and fair hearing. (ECF No. 12 12-15). Defendant counters that the ALJ properly "exercised his discretion and determined that further examination of the vocational expert was unnecessary to the development of this case." (ECF No. 17 at 11). Defendant further asserts that, "[e]ven if the ALJ should have submitted the additional interrogatories…to the vocational expert, this arguable error had no practical effect on the outcome of the decision[.]" (Id. at 12).

"Procedural due process under the Fifth Amendment requires that disability claimants be provided a 'full and fair hearing.'" Passmore v. Astrue, 533 F.3d 658, 663 (8th Cir. 2008) (citing Hepp v. Astrue, 511 F.3d 798, 804 (8th Cir. 2008)). "Social security disability hearings are non-adversarial proceedings and therefore do not require full courtroom procedures." Id. at 663-64.

9

The Court of Appeals for the Eighth Circuit has held that "due process does not afford social security claimants an absolute right to cross-examine individuals who submit a report." Id. at 665.

Here, the ALJ submitted to the vocational expert a hypothetical question based on Plaintiff's RFC. (Tr. 27-30). The hypothetical asked the vocational expert to consider an individual with the following RFC:

> The claimant is limited to jobs that involve understanding, remembering, and carrying out only simple instructions, and performing repetitive tasks. Additionally, the claimant cannot perform jobs that require [] contact with the public, and is limited to jobs that involve only occasional interaction with coworkers and supervisors.

(Tr. 29).

After receiving the vocational expert's answers to the ALJ's interrogatories, Plaintiff's counsel requested the ALJ forward additional interrogatories to the vocational expert. (Tr. 256-57). Plaintiff's interrogatories asked the vocational expert whether the jobs he identified in response to the ALJ's question would be available to the same hypothetical individual if he had the additional limitations of: (1) "need[ing] to be off task for up to 20% of the work day due to his impairments"; or (2) "be absent from work at least two times per month[.]" (Tr. 256).

The ALJ found that the "record discussed above does not support those limitations" and declined to forward Plaintiff's interrogatories to the vocational expert. (Tr. 21). The ALJ explained: "There is no indication in the record that he would be off task twenty percent of the day or would miss two days a week [sic].[5] There are no opinions on which to base these limitations." (Id.).

---

[5] Although the interrogatory inquired about the effects of two absences per month, the ALJ wrote that there was "no indication in the record that he . . . would miss 2 days a week." (Tr. 21). Plaintiff does not challenge the ALJ's reading of the interrogatories. In any event, an arguable

Plaintiff asserts that the ALJ's failure to forward his interrogatories to the vocational expert deprived him of a full and fair hearing. However, the RFC contained in Plaintiff's hypothetical question was the same as the ALJ's. Furthermore, Plaintiff points to no evidence in the record supporting the need to either be off task twenty percent of the day or absent two days per month. In other words, the "interrogatories submitted inquired about information already on the record or information that the ALJ reasonably determined was unnecessary." Kelly v. Colvin, 4:13-CV-1891 CDP, 2015 WL 94252, at *5 (E.D.Mo. Jan. 7,2015). Thus, "the ALJ's exclusion of these questions did not deprive the plaintiff of the opportunity to develop his case."[6] Pautler v. Berryhill, Case no. 4:16-CV-266 CEJ, 2017 WL 1078048, at *18 (E.D.Mo. March 22, 2017).

### IV. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of May, 2017

---

deficiency in opinion writing that had no practical effect on the decision is not sufficient reason to set aside the ALJ's decision. Welsh v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014).

[6] In support of his claim that the ALJ's failure to submit his interrogatories to the vocational expert denied him a "full and fair hearing," Plaintiff cites Rahe v. Astrue, 840 F.Supp.2d 1119 (N.D.Iowa 2011). However, Rahe is factually distinguishable because, there, the plaintiff's interrogatories were expressly based upon evidence in the plaintiff's testimony and medical records. Id. at 1130.